Winton KEMMIS, et al.,
Plaintiffs-Appellants,

v.

James P. McGOLDRICK, individually and doing business as James P. McGoldrick Consulting Engineers, Defendant-Appellee.

No. 82–5466.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 3, 1983.

Decided May 24, 1983.

---

Wayne Jett, Jett, Clifford & Lacquer, Los Angeles, Cal., for plaintiffs-appellants.

Michael Bourbeau, Los Angeles, Cal., for defendant-appellee.

Before SKOPIL, NELSON and CANBY, Circuit Judges.

SKOPIL, Circuit Judge:

The trustees of four employee benefit funds appeal the district court's judgment for the employer in their action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132 (1976 & Supp. V 1981), to enforce payment of trust fund contributions. We reverse.

## FACTS AND PROCEEDINGS BELOW

McGoldrick, the owner of a consulting engineering firm, signed a short form collective bargaining agreement with Local Union No. 12 of the International Union of Operating Engineers ("Local 12"). The short form agreement incorporates by reference the Master Survey Agreement, which obligates the employer to make contributions to the several trusts at specified rates for "hours worked by (or paid) each employee under this Agreement...."[1]

McGoldrick had one full-time salaried union employee who split his work time between surveying, which is covered under the Master Survey Agreement, and office work, which is not. At the time of contracting, a Local 12 representative and McGoldrick discussed the required contributions. The district court found that the parties agreed orally that McGoldrick would contribute to the trust funds based only on the minimum hours necessary for his employee to maintain eligibility for benefits. McGoldrick reported and contributed to the trusts based on 200 hours per calendar quarter, the minimum hours necessary for benefit eligibility.

The trustees filed suit under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976), and ERISA, 29 U.S.C. § 1132(e) (1976), to collect allegedly delinquent contributions. After a bench trial, the district court found no liability for delinquent contributions and awarded McGoldrick attorney's fees.

The district court stated the issue as whether the Master Survey Agreement re-

---

1. This language is taken from Article XV, Health & Welfare Fund, of the Master Survey Agreement. The language in the provisions for the other three employee benefit funds is identical in all relevant respects.

quires the employer of a salaried union member to make fringe benefit contributions for a 40-hour week when the employee actually does union-covered work for substantially fewer hours. The district court held that the Master Survey Agreement was ambiguous on this point. The court then found the oral understanding between Local 12 representatives and McGoldrick at the time of contracting controlled the interpretation of the Master Survey Agreement.

The trustees appeal the judgment for McGoldrick. They also appeal the award of attorney's fees in the event the judgment is affirmed. If the judgment is reversed, the trustees claim a right to fees for themselves under 29 U.S.C. § 1132(g)(2) (Supp. IV 1981).

## ISSUES

1. Did the district court err in relying on oral understandings between union officials and the employer to interpret employee benefit provisions in the Master Survey Agreement?

2. Were attorney's fees properly awarded?

## STANDARD OF REVIEW

■ The interpretation of a contractual provision is a question of law reviewed *de novo*. *Construction Teamsters Health and Welfare Trust v. Con Form Construction Corp.*, 657 F.2d 1101, 1103 (9th Cir.1981).

## INTERPRETING EMPLOYEE BENEFIT PROVISIONS

■ Federal law governs parties' rights in actions such as this under the Labor Management Relations Act. *Waggoner v. Dallaire*, 649 F.2d 1362, 1365 (9th Cir.1981). A district court may use forum contract law to flesh out federal principles affecting the respective rights of parties, but only where "it effectuates the policy that underlies federal labor legislation." *Dallaire*, 649 F.2d at 1365 (quoting *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1109 (9th Cir.1979)).

■ A collective bargaining agreement is not governed by the same principles of interpretation applicable to private contracts. *Transportation-Communication Employees Union v. Union Pacific Railroad Co.*, 385 U.S. 157, 160–61, 87 S.Ct. 369, 371, 17 L.Ed.2d 264 (1966). Interpreting such agreements requires us to "consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements." *Id.* at 161, 87 S.Ct. at 371. We agree with the trustees that the district court erred in applying ordinary contract principles to resolve ambiguity in this industry-wide collective bargaining agreement.

■ Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5) (1976 & Supp. V 1981), permits employer contributions to employee welfare trust funds, but requires that the detailed basis on which such payments are made be set forth in writing. *San Pedro Fishermen's Welfare Trust Fund v. Di Bernardo*, 664 F.2d 1344, 1345 (9th Cir.1982); *Dallaire*, 649 F.2d at 1366. The policy behind section 302(c)(5) requires that contract interpretation of fringe benefit provisions be confined to the written terms of the welfare trust fund agreement. *Di Bernardo*, 664 F.2d at 1345. Oral agreements between union representatives and employers regarding the meaning of a written trust fund agreement are difficult to prove. Judicial recognition of such oral statements invites collusion and controversy to the detriment of the employee beneficiaries. *Id.* These principles have been applied to both prior oral understandings, *Dallaire*, 649 F.2d at 1366, and subsequent modifications, *Di Bernardo*, 664 F.2d at 1345. *See also Boyle v. North Atlantic Coal Corp.*, 331 F.Supp. 1107, 1108 (W.D.Penn.1971).

In light of the statutory requirement of written employee benefit trust provisions, the legislative purpose underlying the statute, and the cases in our circuit, the district court erred in applying oral understandings to interpret the disputed language.

Employee benefit provisions in the industry-wide Master Labor Agreement similar to these at issue here have been interpreted by this court for split-work employees such as McGoldrick's employee. *Waggoner v. C & D Pipeline Co.,* 601 F.2d 456, 459 (9th Cir.1979). "[T]he agreement requires employers to make contributions for all hours worked by employees who perform any work covered by the agreement." *Id.* For full-time salaried employees, employers are required to contribute based on 40 hours per week. *Id.* This interpretation is the "settled Ninth Circuit rule" for split-work employees under the Master Labor Agreement. *Dallaire,* 649 F.2d at 1369. *Accord, Waggoner v. Wm. Radkovich Co., Inc.,* 620 F.2d 206 (9th Cir. 1980) (per curiam); *Burke v. Lenihan,* 606 F.2d 840 (9th Cir.1979). The interpretation has been applied to the employee benefit provisions of the Master Survey Agreement. *Seymour v. Hull & Moreland Engineering,* 418 F.Supp. 190, 197 (C.D.Cal. 1976), *modified,* 605 F.2d 1105 (9th Cir.1979) (precise issue not appealed).

In light of these holdings, interpretation of the disputed language in the Master Survey Agreement is controlled by interpretations of similar language in the Master Labor Agreement. *See Transportation-Communication Employees,* 385 U.S. at 161, 87 S.Ct. at 371. The overriding federal policy is "best effectuated if collective bargaining agreements are interpreted and enforced in a uniform manner." *Seymour,* 605 F.2d at 1109. Accordingly, the agreement requires McGoldrick to contribute to each of the trusts at the specified rates based on 40 hours per week for his full-time salaried employee.

McGoldrick may have been misled by Local 12 representatives. Under the prevailing law, however, that does not affect his obligation to the employee benefit trusts. *E.g., Dallaire,* 649 F.2d at 1366. The record shows the trustees sent notices to all employers within three years before this suit explaining the contribution requirements as interpreted by the Labor Management Adjustment Board and applied in the cases cited above. *See C & D Pipeline,* 601 F.2d at 458–59. McGoldrick does not contend that the trustees consented to his agreement with Local 12 representatives. Our decision does not preclude a written modification of employee benefit provisions assented to by the third-party beneficiary employee benefit trustees.

## ATTORNEY'S FEES

The district court relied on 29 U.S.C. § 1132(g)(1) (Supp. V 1981), as amended in 1980, as authority for awarding attorney's fees to McGoldrick. We need not decide whether an award of attorney's fees to a prevailing employer is proper since we find the trustees prevail on the issue appealed. However, 29 U.S.C. § 1132(g)(2) (Supp. V 1981) now makes the award of attorney's fees mandatory when the trustees prevail in actions to enforce and collect benefit fund contributions. *Di Bernardo,* 664 F.2d at 1346. The trustees are entitled to an award under section 1132(g)(2) if they ultimately prevail in the district court.[2] In determin-

---

**2.** We note that McGoldrick asserted other defenses at trial, but the district court did not rule on them. The parties did not brief or argue the other defenses on appeal and we decline to rule on them. Any issue not expressly or impliedly disposed of on appeal is left open for the trial court's reconsideration on remand. *Beltran v.* *Myers,* 701 F.2d 91, 93 (9th Cir.1983); *Liberty Mutual Insurance Co. v. E.E.O.C.,* 691 F.2d 438, 441 (9th Cir.1982).

We think it preferable that district courts make findings of fact and conclusions of law after a bench trial on every issue presented to it. Such a practice would make appellate re-

998

ing reasonable attorney's fees, the district court should consider the relevant factors as outlined in *Seymour*, 605 F.2d at 1117. *See also Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir.1980).

The judgment of the district court is RE-VERSED and the case REMANDED for further proceedings consistent with this opinion.

view more efficient and avoid piecemeal appeals. In this case, however, it is necessary for

us to remand for further proceedings in the trial court.