**GOLDEN STATE TRANSIT CORP., a California corporation, d/b/a Yellow Cab of Los Angeles, Plaintiff–Appellant,**

v.

**CITY OF LOS ANGELES, a municipal corporation, Defendant–Appellee.**

No. 87–6074.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 2, 1988.

Decided Sept. 15, 1988.

Zachary D. Fasman, Paul, Hastings, Janofsky & Walker, Washington, D.C., for plaintiff-appellant.

John F. Haggerty, Asst. City Atty., Los Angeles, Cal., for defendant-appellee.

Before WALLACE, ALARCON and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

In *Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 618, 106 S.Ct. 1395, 1401, 89 L.Ed.2d 616 (1986), the Supreme Court held that the City of Los Angeles ("City") could not condition renewal of a taxi company's franchise on settlement of a labor dispute. The Court observed that such an action "destroyed the balance of power designed by Congress [in the National Labor Relations Act], and frustrated Congress' decision to leave open the use of economic weapons." *Id.* at 619, 106 S.Ct. at 1401. The Court concluded that Congress had preempted intrusion by "a local government" into the collective bargaining process by enacting the NLRA, section 8(d), as amended, 29 U.S.C. § 158(d). The case was remanded to the district court for further proceedings.

On remand, appellant Golden State Transit Corporation ("Golden State") sought damages from the City for nonrenewal of its franchise. The district court concluded that it had the authority to grant injunctive relief and also ancillary monetary relief, but that it did not have the authority to grant compensatory damages under 42 U.S.C. § 1983, based on an alleged NLRA violation or Supremacy Clause preemption. The Court also found that it did not have the authority to award damages under any inherent power it possessed. The district court certified the question for interlocu-

tory appeal, 660 F.Supp. 571 (C.D.Cal.1987). Golden State has appealed.

We affirm.

I

On April 1, 1986, the Supreme Court concluded that the City's decision to condition renewal of the settlement of a labor dispute could be enjoined under the National Labor Relations Act ("NLRA"). *Golden State*, 475 U.S. at 619–20, 106 S.Ct. at 1401–02. The facts preceding the Supreme Court decision are as follows:

In early 1980, Golden State, which operated a taxicab company, applied to the City for renewal of an operating franchise. Golden State operated 400 cabs. The franchise was due to expire on March 31, 1981.

In October 1980, before the renewal decision was taken up by the City, a labor contract with Golden State's drivers expired. A short-term labor contract was negotiated between Golden State and its drivers, to end on February 10, 1981.

On February 11, 1981, Golden State's drivers struck. In view of the strike, the City postponed action on renewal of Golden State's franchise until February 17, 1981.

On February 17, 1981, the City Council decided to extend Golden State's franchise from March 31, 1981 to April 30, 1981, on condition that, prior to March 27, 1981, the Council decided that such an extension was in the best interests of the City. On March 23, 1981, the Council held a public hearing on the "best interests" question. The dominant issue discussed at the hearing was the drivers' strike.

For a variety of reasons, the Council decided to condition renewal of Golden State's taxicab franchise on settlement of its labor dispute. *See Golden State*, 475 U.S. at 610–11, 106 S.Ct. at 1396–97. A subsequent motion to extend the franchise was defeated.

On March 31, 1981, the Golden State Taxicab franchise expired.

In federal court, Golden State sought injunctive relief and damages from the City. The district court found "undisputed [the fact] that the sole basis for refusing to extend [Golden State's] franchise was its labor dispute with its … drivers," 520 F.Supp. 191, 193 (C.D.Cal.1981). The court also found that the City had "threaten[ed]" to terminate the franchise unless Golden State settled its labor dispute, *id.* at 194, and that the City had denied Golden State an "essential weapon of economic strength—the ability to wait out a strike." *Golden State*, 475 U.S. at 611–12, 106 S.Ct. at 1397.

On the basis of Golden State's claim that the NLRA preempted the City's intrusion into the collective bargaining process, the district court granted Golden State's motion for a preliminary injunction.

On appeal by the City, we found "ample evidence" to support the injunction, but dissolved it after concluding that Golden State had only a small likelihood of prevailing on the merits. *Golden State*, 686 F.2d 758, 761–62 (9th Cir.1982). Golden State's petition for certiorari was denied by the Supreme Court. *Golden State*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983).

Thereafter, the district court granted summary judgment for the City. We affirmed this decision, holding that the City's intrusion was not preempted by Congress' enactment of the NLRA. *Golden State*, 754 F.2d 830, 832 (9th Cir.1985). The Supreme Court reversed and remanded. The Supreme Court held that, under *International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976), the City's action interfered with " 'the free play of economic forces' [citation omitted]" in collective bargaining between the company and its drivers, *Golden State*, 475 U.S. at 614, 106 S.Ct. at 1398, and that such a local action—conditioning franchise renewal on labor dispute settlement—was precluded, since collective bargaining was precisely the conduct which " 'Congress intended to be unregulated.' " *Golden State*, 475 U.S. at 614, 106 S.Ct. at 1398, quoting *Metropolitan Life Ins. v. Massachusetts*, 471 U.S. 724, 749, 105 S.Ct. 2380, 2394, 85 L.Ed.2d 728 (1985). The Supreme Court agreed

with Golden State that the NLRA preempted this action by the City.

On remand, the district court ordered the City to grant Golden State a four-year franchise and ancillary monetary relief sufficient to "salvage" Golden State. The court determined that the ancillary relief would be limited to the fair market value of Golden State's assets as of the date of the City's action, less any sum Golden State received pursuant to bankruptcy proceedings.

During remand proceedings, the district court ordered briefing and argument on the question whether it had authority to grant additional compensatory damages to Golden State.

Following full briefing and argument, the district court concluded that it did not have authority to grant further compensatory damages. *Golden State,* 660 F.Supp. at 571. The court cited three reasons: First, Golden State was not entitled to damages under 42 U.S.C. § 1983 for the alleged NLRA "violation" by the City. Second, while the Supremacy Clause preempted State law, it did not entitle Golden State to damages under 42 U.S.C. § 1983. Third, the district court had no inherent authority to award further damages.

The district court stayed trial on the amount of ancillary monetary relief to certify the compensatory damage question for interlocutory appeal. *Golden State,* 660 F.Supp. at 582.

Golden State timely appeals. We have jurisdiction pursuant to 28 U.S.C. § 1292(b).

## II

On appeal, Golden State claims, first, that compensatory damages are available under 42 U.S.C. § 1983, as a result of the City's denial of rights created under the NLRA. Second, Golden State claims that the Supremacy Clause entitles it to an award of damages under section 1983, since there was "direct and actual conflict" between the City's conduct and federal law. Finally, Golden State claims that federal courts have inherent authority to award

complete relief where federal statutory or constitutional rights are violated, and that such rights are violated here.

## A

Golden State first premises its section 1983 claim for compensatory damages on the City's alleged "violation" of the NLRA.

Golden State claims that the City's denial of the NLRA-conferred "right" to unregulated settlement of its labor dispute creates an entitlement, under section 1983, to damages against the City.

Golden State observes that section 1983 permits recovery for "violation" of a federal statute where that statute creates substantive, enforceable rights. *See Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (violation of statute by failure to consider specific factors relevant to aid for dependent children permits section 1983 relief); *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) (section 1983 provides cause of action where rights are "secured" by laws of United States).

Golden State argues that the NLRA, specifically section 8(d), as amended, 29 U.S.C. § 158(d), grants "secured rights" protected by 42 U.S.C. § 1983, and that the City has "violated" these rights, thus entitling Golden State to section 1983 damages from the City. We disagree.

In *Wright v. Roanoke Redevelopment and Housing,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), the Supreme Court noted that there are "two exceptions to the application of section 1983 to remedy statutory violations: where Congress has foreclosed such enforcement of the statute in the enactment itself[,] and where the statute did not create enforceable rights, privileges, or immunities within the meaning of section 1983." *Id.* at 422, 107 S.Ct. at 770.

Against the backdrop of *Wright,* and decisions of this court, it is clear that no such right, privilege or immunity secured by the NLRA was "violated" by the City in this instance.

Equally clear is the fact that Congress has preempted this field, limiting recovery

for unfair labor practices to remedies specifically provided in the NLRA.

### (1)

■ In *White Mountain Apache Tribe v. Williams*, 810 F.2d 844 (9th Cir.1984), *cert. denied*, 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987), we stated "[s]ection 1983, as interpreted in *Thiboutot* [citations omitted] and its progeny, enforces federal statutory rights only against direct violations of the federal statute in question." 810 F.2d at 851, n. 9; *see also Pennhurst*, 451 U.S. at 28, 101 S.Ct. at 2630; *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981) (section 1983 requires that "a federal statute [be] ... violated").

Here, the federal statute in question is the NLRA. The provision at issue is section 8(d), as amended, 29 U.S.C. § 158(d).

Generally, this statute imposes "mutual obligation[s]" upon "the employer and the representative of the employees" to "bargain collectively" and "in good faith."

Specifically, 29 U.S.C. §§ 158(a) and (b) impose obligations on "an employer" and on "a labor organization." Actions of a third party, not employer or employee labor organization, do not give rise to a claim for damages against the third party under these provisions.

Since the City was at no time party to the collective bargaining agreement, the City cannot be subject to a section 1983 action premised on a party's alleged violation of 29 U.S.C. § 158. We do not believe that the NLRA was intended to transform actions of third parties', neither employer nor employee labor organization, into "violations" by "an employer" or "a labor organization" under the statute.

Since there is no "direct violation" of the NLRA, we conclude that there is no entitlement to additional compensatory damages from the City under section 1983.

### (2)

■ Even if the City were subject to the NLRA, and the City's actions directly "violated" the NLRA, section 1983 damages would be unavailable, since Congress' enactment of the NLRA has preempted this field.

Applying the test set out in *Sea Clammers*, 453 U.S. at 20, 101 S.Ct. at 2626, cited with approval in *Wright*, we conclude that "the remedial devices provided in [the statute] are sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under section 1983." 479 U.S. at 423, 107 S.Ct. at 770.

In a similar case, involving a cause of action brought by trustees for an employment benefit trust under 29 U.S.C. § 158(d), we noted:

> We do not reach the merits of the trustees' section 8(d) [section 158(d)] theory, however, for we have recently held that the federal courts lack jurisdiction to consider claims based on violations of section 8(d) [section 158(d)] of the NLRA. Exclusive jurisdiction over section 8(d) [section 158(d)] claims rests with the National Labor Relations Board. *Arizona Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co.*, 753 F.2d 1512, 1515–17 (9th Cir.1985).

*Waggoner v. Dallaire*, 767 F.2d 589, 592 (9th Cir.1985), *cert. denied*, 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 601 (1986).

Since the City did not violate a provision of the NLRA, and since Congress has limited relief for such an action to the NLRA, we conclude that section 1983 damages are not available here.

### B

■ Golden State claims that the district court erred in concluding that it had no authority to grant section 1983 damages based on the Supremacy Clause.[1]

The district court concluded that, in *White Mountain Apache*, we expressly held that the preemption of state law under

---

1. The Supremacy Clause of the United States Constitution, Article VI, provides: "This Constitution, and the Laws of the United States ... shall be the Supreme Law of the Land."

the Supremacy Clause would not support a cause of action under section 1983. *Golden State,* 660 F.Supp. at 576–77.

In *White Mountain Apache,* we held that the Supremacy Clause "is not a rights conferring provision that protects the individual against government intrusion." 810 F.2d at 848. We also held that "preemption of state law under the Supremacy Clause—at least if based on federal occupation of the field or conflict with federal goals—will not support an action under section 1983...." *Id.* at 850. "Explicit provisions of federal law" would need to be at issue in order to trigger consideration of section 1983 damages. *Id.* at 850.

In the case *sub judice,* the Supreme Court concluded that the City's action had frustrated Congress' intent to permit free bargaining between parties to a labor contract. *Golden State,* 475 U.S. at 615, 106 S.Ct. at 1399. The City's action was preempted not because it conflicted with a federal regulation, but because Congress intended to create an unregulated preserve for free labor-management negotiation. *Id.* at 614–15, 106 S.Ct. at 1399–1400. This conclusion was pronounced by the Supreme Court, after a thorough analysis of the NLRA's language and legislative history. *Id.* at 616–17, 106 S.Ct. at 1399–1400.

Since the City's actions "destroyed the balance of power designed by Congress, and frustrated Congress' decision to leave open the use of economic weapons," *id.* at 619, 106 S.Ct. at 1401, the Supreme Court concluded that the City's action was in conflict with federal goals embraced by Congress upon enactment of the NLRA, specifically, the goal at the center of the NLRA—collective bargaining free of government intervention.

Since we cannot say that the City's actions directly conflict with an "explicit provision" of the NLRA—the NLRA does not explicitly prohibit the City from acting in the area of labor relations—and since the Supreme Court identified only a conflict with the NLRA's "goal" of free collective bargaining (to be remedied by injunction and ancillary monetary relief), we are bound by our own holding in *White Mountain Apache,* 810 F.2d at 850.

We conclude that Golden State is not entitled to section 1983 damages on the basis of Supremacy Clause preemption.

### C

Golden State argues that, absent the right to recovery under section 1983, a federal court may award damages on the basis of its "inherent powers."

■ Inherent powers of the federal courts are those essential to the exercise of conferred powers, and outside the reach of direct democratic control. They must, therefore, be exercised with extraordinary restraint. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980).

■ The cases cited by appellant to support the inherent authority of a district court to award damages in this instance are not apposite. *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) are cases in which an individual right was implicated, the Fourth Amendment guarantee against unreasonable searches and seizures. *See Bell,* 327 U.S. at 679, 66 S.Ct. at 774; *Bivens,* 403 U.S. at 390–91, 91 S.Ct. at 2001–02. In addition, *Bell* implicated an individual right under the Fifth Amendment. 327 U.S. at 679, 66 S.Ct. at 774. Here, the constitutional provision at issue is the Supremacy Clause, which creates no such individual constitutional right. *See White Mountain Apache,* 810 F.2d at 848. Accordingly, the inherent authority to grant relief in order to secure an individual right under the inherent authority of the federal courts may not be exercised here.

■ Section 1983 was intended to supplement remedies provided by the States. However, *McNeese v. Board of Education,* 373 U.S. 668, 671, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622 (1963), *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), and *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), do not support the proposition, argued by Golden

State, that inherent authority exists in the federal courts to award compensatory damages where section 1983 damages are unavailable. *Toll v. Moreno*, 458 U.S. 1, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982), involved enforcement of a stay preserving issues for appeal; that case provides no guidance in resolving the inherent power question raised here. On the facts in this case, the district court correctly declined the exercise of "inherent powers" to award further damages.

## CONCLUSION

Golden State is not entitled to further compensatory damages under 42 U.S.C. § 1983, either on the basis of the alleged NLRA violation or, alternatively, on the basis of the Supremacy Clause preemption. The inherent powers of the federal courts do not otherwise allow an award of compensatory damages.

AFFIRMED.

ALARCON, Circuit Judge, concurring.

I concur in the majority's opinion under compulsion of our decision in *White Mountain Apache Tribe v. Williams (White Mountain)*, 810 F.2d 844 (9th Cir.), *cert. denied*, 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987). In *White Mountain* we held that under Supreme Court precedent, 42 U.S.C. § 1983 "enforces federal statutory rights only against *direct* violations of the federal statute in question[,]" *id.* at 851 n. 9 (emphasis added). Thus, the law of the circuit compels us to hold that section 1983 damages are not available because the City of Los Angeles did not directly violate the National Labor Relations Act (NLRA). I write separately on the issues discussed in Rubric II(A)(1), because I believe that *White Mountain* is inconsistent with the reasoning of the Supreme Court in *Wright v. Roanoke Redev. & Housing*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987).

### I

Section 1983 reads as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the *deprivation of any rights, privileges, or immunities secured by the Constitution and laws,* shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

(Emphasis added). One month before the final decision in *White Mountain* was filed, the Supreme Court, in *Wright*, 107 S.Ct. at 771, said that under its prior rulings, "if there is a state deprivation of a 'right' secured by a federal statute, § 1983 provides a remedial cause of action...." We did not discuss *Wright* in our decision in *White Mountain*.

The Court in *Wright* did not hold that a state actor would be liable only if a federal statute expressly forbids the state actor from such interference. Instead, the Court focused on protecting the right secured by federal law, and not on whether all persons who might deprive another of the benefits of such a statute are identified by Congress. The language used by the Court in *Wright* carries out the plain meaning of the language of section 1983. Our opinion in *White Mountain* frustrates congressional intent.

29 U.S.C. § 158(d) (1982) provides that the obligation of the employer and the employees' representative is to bargain collectively "but such obligation does not compel either party to agree to a proposal or require the making of a concession...." The provision allows free use of economic weapons by both parties to the collective bargaining process. *Golden State Transit Corp. v. City of Los Angeles (Golden State)*, 475 U.S. 608, 615, 106 S.Ct. 1395, 1399, 89 L.Ed.2d 616 (1986). The Supreme Court has interpreted section 158(d) as prohibiting the government from interfering in the collective bargaining process and interfering with the right to use economic weapons. *Id.* at 615–16, 106 S.Ct. at 1399–1400.

In the case *sub judice*, the City of Los Angeles deprived Golden State of the statu-

tory right to engage in the collective bargaining process free from third-party interference. 29 U.S.C. § 158(d); *Golden State*, 475 U.S. at 618, 106 S.Ct. at 1401. Thus, under *Wright*, Golden State would appear to have a cause of action for damages under section 1983. However, because third party interference is not expressly prohibited by the NLRA, the City did not directly violate the statute. Therefore, while the City interfered with Golden State's rights, *White Mountain* compels us to hold that section 1983 damages are not available because there was no direct violation of a statute by the City.

## II

In its opinion, the majority discusses whether section 1983 damages would be available if the City directly violated the NLRA. Maj. op. at 635. Because we find no direct violation of the NLRA as is required by *White Mountain*, it is not necessary to reach this question. Therefore, I do not join in that portion of the majority opinion and offer no opinion as to what ruling would be made if it were necessary to reach the issue.

I concur in the remainder of the opinion.